UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALMA LORENA TORRES FERRERA,

Petitioner,

v.

BRUCE SCOTT, Warden of the Northwest
ICE Processing Center, and KRISTI
NOEM, Secretary of the United States
Department of Homeland Security,

Respondents.

CASE NO. 2:26-cv-00583-TL

AMENDED ORDER[1] ON PETITION
FOR HABEAS CORPUS

This matter is before the Court on Petitioner Alma Lorena Torres Ferrera's Petition for

Habeas Corpus ("habeas petition"). Dkt. No. 1. Respondents are Bruce Scott, Warden of the

Northwest ICE Processing Center ("NWIPC"), and Kristi Noem, Secretary of the United States

Department of Homeland Security ("DHS").[2] Having considered the motion, Respondent's

---

[1] This Order amends and supersedes the Court's prior Order (Dkt. No. 16). Amendments are limited to the correction of proofreading errors and the addition of footnote 10.

[2] Petitioner names "Alejandro Mayorkas" as the Secretary of DHS; however, Mr. Mayorkas has not been in this role for some time. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes outgoing DHS Secretary Kristi Noem for Mr. Mayorkas.

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 1

return memorandum (Dkt. No. 4), Petitioner's traverse (Dkt. No. 13), and the relevant record, the Court GRANTS the habeas petition and ORDERS Petitioner's release.[3]

## I.   BACKGROUND

The facts recounted herein include uncontested allegations from the habeas petition and judicially noticeable procedural facts evidenced by immigration records filed as attachments to Respondent's return memorandum in opposition to the Habeas Petition. *See* Dkt. Nos. 6-1–6-12.[4]

Petitioner is a citizen and national of Honduras. However, she has lived in the United States for most of the last 20 years and has five U.S. citizen children. Petitioner first entered the United States without inspection in 2005 or 2006. In 2009, she was ordered removed and was removed to Honduras.

In 2010, Petitioner reentered the United States without inspection. In 2019, she was encountered by Immigration and Customs Enforcement ("ICE") and was processed for reinstatement of removal under 8 U.S.C. § 1231(a)(5). Petitioner expressed a fear of returning to Honduras but was not given a credible fear interview at that time. She was released on an Order of Supervision ("OSUP"). Respondent asserts that Petitioner was released because she was breastfeeding an infant. Dkt. No. 4 at 3. However, the OSUP itself makes no mention of breastfeeding or dependent care, instead explaining that the reason for Petitioner's release on supervision was "[b]ecause the agency ha[d] not effected her deportation or removal during the period prescribed by law[.]" Dkt. No. 6-7 (OSUP) at 2.[5] The OSUP was not time-limited or

[3] When used in the singular, the term "Respondent" refers to Respondent Noem. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[4] Petitioner presents, along with her return, extensive documentation regarding her personal equities and pending T Visa application. *See* Dkt. No. 14 (Currie Decl. and Attachments). However, the relevance of these documents to Petitioner's habeas claim is unclear, and they did not inform the Court's decision or understanding of the material facts.

[5] Respondent's assertion that Petitioner was released because she was breastfeeding an infant is based on the declaration of Deportation Officer Delano R Dumo. *See* Dkt. No. 4 at 3 (citing Dkt. No. 5 (Dumo Decl.) ¶ 10). However, Officer Dumo's declaration is based in part on his review of "databases" and "notes from the previous and

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 2

conditioned on Petitioner's ongoing family care responsibilities. *Id.* Instead, Petitioner was required to appear in person when requested by DHS, not travel outside Washington for longer than 48 hours without DHS leave, notify DHS in writing of any change in address, refrain from committing crimes and associating with criminals, and assist as necessary in obtaining travel document for removal. *Id.* at 2, 4.

Petitioner remained in the United States under the conditions of her OSUP for the next seven years, checking in with DHS periodically as required. While DHS form I-213 appears to allege some type of law enforcement contact in 2022 (Dkt. No. 6-8 at 3 ("Dangerous Drugs . . . Disposition: 'unavailable'")), it is unclear whether that contact was related to alleged conduct pre-dating her OSUP (*see id.*), and Respondent does not allege or argue that Petitioner ever violated any condition of her OSUP (*see generally* Dkt. No. 4).

On January 27, 2026, Petitioner was arrested while reporting to DHS as required under her OSUP. Petitioner alleges, and Respondent does not dispute:

> On January 26, 2026, Petitioner reported to ICE regarding an ankle monitor installation. She was initially released but instructed to return the following day due to equipment malfunction. When she complied and returned, Petitioner was taken into custody despite no allegation of supervision violation, flight risk, or danger to the community.

Dkt. No. 1 at 3. Petitioner was taken into custody at the Northwest ICE Processing Center ("NWIPC") and detained pursuant to 8 U.S.C. § 1231(a).[6] In Respondent's return memorandum, Respondent admits possessing no record that Petitioner was ever provided with the interview required by regulation for OSUP revocation, *see* 8 C.F.R. §§ 241.4(l), 241.13(i), nor that

current officers in charge of the case," which have not been provided to the Court, and there is no indication that Officer Dumo has personal knowledge of the reasons for Petitioner's release six years ago.

[6] In its prior order, the Court erroneously stated that "[t]he OSUP was revoked." Dkt. No. 12 at 2. This assumption was based a statement on DHS Form I-213 that Petitioner's "OSUP will be revoked as of 1/27/2026" (Dkt. No. 6-8 at 4) as well as the reality that Petitioner, as a practical matter, was deprived of the liberty her OSUP granted. As a legal matter, though, Respondent's concession indicates that the OSUP was not, in fact revoked.

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 3

Respondent's OSUP was ever actually revoked. Dkt. No. 4 at 5.

On February 17, 2026, an asylum officer interviewed Petitioner and concluded that she did not have a credible fear of persecution or torture if returned to Honduras. Petitioner filed her habeas petition the next day, challenging "the legality and constitutionality of her continued civil immigration detention without meaningful custody review, in violation of the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment." Dkt. No. 1 at 1–2.

On February 25, 2026, an Immigration Judge affirmed the asylum officer's determination upon de novo review. This determination, which is not appealable, *see* 8 C.F.R. § 1208.31(g)(1), ended Petitioner's legal challenges to her reinstated final order of removal.

On March 4, 2026, at 12:34 p.m., Petitioner's counsel received an email from opposing counsel that Petitioner's removal to Honduras was imminent. In compliance with the scheduling order entered in this case pursuant to General Order 10-25 (*see* Dkt. No. 2 ¶ 3), this email gave 48 hours' notice before Petitioner's removal might be executed.[7] Two days later, on March 6, 2026, at 12:00 p.m., Petitioner filed a motion for a Temporary Restraining Order. Dkt. No. 7. The Court denied the motion because Petitioner had not shown (or even argued) that she had a likelihood of success on the merits of the underlying habeas petition. Dkt. No. 12. As of the date of this Order, it is unknown to the Court whether Petitioner remains at NWIPC or has already been removed.

The Court now considers the claims asserted in the habeas petition in light of all facts now in the record and full argument from both parties.

//

---

[7] General Order 10-25 was entered on December 18, 2025, after consultation and cooperation of various stakeholders, including the U.S. Attorney's Office, the Federal Defender's Office, and the Northwest Immigrant Rights Project. It can be found at https://www.wawd.uscourts.gov/sites/wawd/files/General%20Order%2010-25 %20re%20Immigration%20Habeas.1.pdf.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 8 U.S.C. § 2241(c).

## III.    DISCUSSION

Petitioner alleges that her present detention violates (1) the Immigration and Nationality Act ("INA") and (2) the Due Process Clause of the Fifth Amendment of the United States Constitution. Dkt. No. 1 at 1–2. However, as Respondent points out (Dkt. No. 4 at 5), Petitioner does not identify any provision of the INA that is violated by her detention. Accordingly, the Court considers the Petition to effectively allege only that Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Civil detention, including immigration detention, violates due process when it is not reasonably related to a legitimate, nonpunitive governmental objective, *see id.* at 690, and when a person's protected liberty interest is deprived without adequate procedures, *see Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In her habeas petition, Petitioner alleges that her detention is unconstitutional on both grounds. *See* Dkt. No. 1 at 5 ("Petitioner's detention is not reasonably related to removal objectives . . . ."); *id.* at 6 ("Where detention persists without adequate

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 5

procedural safeguards, federal courts may intervene.").[8]

The Court considers each allegation in turn.

**A.       Whether Detention Is Reasonably Related to a Legitimate Government Objective**

Petitioner cites *Zadvydas*, 533 U.S. at 688, for the proposition that "[c]ivil immigration detention is constitutionally permissible only where it is authorized by statute and reasonably related to a legitimate governmental purpose." Dkt. No. 1 at 5. Where civil detention is *not* reasonably related to a legitimate governmental purpose, is considered to be unconstitutionally punitive, a principle dating back to *Wong Wing v. U.S.*, 163 U.S. 228 (1896).

While *Zadvydas* established a paradigm under which a noncitizen who, like Petitioner, is detained after the issuance of a final order of removal might demonstrate that their confinement has become unconstitutionally prolonged, 533 U.S. at 701, it also acknowledged that the "basic purpose" of immigration detention under 8 U.S.C. § 1231(a) is "assuring the [noncitizen]'s presence at the moment of removal," *id.* at 699, and identified a 6-month period of detention as presumptively reasonably to effect this purpose, *id.* at 701.

Here, Petitioner has been detained for fewer than six months since reinstatement of her removal order, and does not explain why her detention is not presumptively reasonable under *Zadvydas* (or if and how that presumption might be overcome). The reasons given for why her "detention is not reasonably related to removal objectives"—her "longstanding U.S. residence," role as "primary caregiver to five U.S. citizen children," pursuit of a humanitarian relief, and years of compliance with her OSUP (Dkt. No. 1 at 5)—do not actually interrupt the relationship between detention and removal in any obvious way. Petitioner provides no evidence to support

---

[8] In its prior order, the Court expressed doubt as to Petitioner's likelihood of success on the merits of her claim. Dkt. No. 7 at However, both Respondent's return memorandum (and attached immigration records) and Petitioner's traverse have clarified the factual bases of Petitioner's due process claim.

her claim that, as a legal matter, such facts can render otherwise-lawful detention, in her words, "excessive and disproportionate," and the Court is aware of no authority so holding. Nor does Petitioner present the Court with any other theory upon which her detention might be found to be unconstitutionally punitive.

With nothing more to go on from Plaintiff, the Court has no basis for finding that Petitioner's detention is not reasonably related to a legitimate government objective.

**B.      Whether Petitioner Was Provided with Constitutionally Adequate Procedures**

"While the Government may detain noncitizens before removing them, noncitizens must still be afforded due process protections before they are detained." *Tzafir v. Bondi*, C25-2126, 2026 WL 81759, at *4 (W.D. Wash. Jan. 12, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017)). Here, the Court considers whether the protections provided to Petitioner upon re-detention were constitutionally adequate.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

In *Mathews*, the Supreme Court established a three-part balancing test to determine whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 7

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit apply the *Mathews* test to evaluate claims by immigration detainees who have previously been released that their re-detention lacked constitutionally adequate procedural safeguards. *See, e.g.*, *Sarwari v. Wamsley*, No. C26-121, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Here, neither Petitioner nor Respondent identifies the *Mathews* test as the relevant test for evaluating Petitioner's procedural due process claim. Therefore, the Court does not have the benefit of the Parties' arguments on the application of *Matthews* to this case. However, the Court is guided by the facts in the record and the persuasive rulings of other courts in this district considering the re-detention of noncitizens previously released on Orders of Supervision. These courts have consistently found that a noncitizen who has been released and has lived with relative freedom in the United States for a number of years has a protected interest in not being detained and is owed some process by which to contest their re-detention. *See, e.g.*, *Kumar v. Noem*, No. C26-294, 2026 WL 668335, at *4 (W.D. Wash. Mar. 10, 2026); *Dieng v. Hermosillo*, No. C26-190, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026); *Zavorin v. Wamsley*, No. C26-173, 2026 WL 309733, at *3–4 (W.D. Wash. Feb. 5, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at * 3–5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 8

1130, 1136 (W.D. Wash. Sept. 12, 2025). "District courts in the Ninth Circuit have also recognized that a petitioner's liberty interest does not expire along with his parole." *Kumar*, 2026 WL 668335, at *4 (citation modified) (citing *Quiroga-Chaparro v. Warden of the Golden State Annex. Det. Facility*, No. C25-1731, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025); *G. G. v. Kaiser*, C25-1471, 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136–37)). Courts in this Circuit have also "repeatedly, consistently, and with growing frequency found constitutional violations where individuals are detained at check-ins or appointments without prior notice or opportunity to be heard," as Petitioner was. *Chaudhry v. Bondi*, No. C25-2339, 2025 WL 3706534, at *6 (W.D. Wash. Dec. 22, 2025) (collecting cases). The fact that a noncitizen has previously been removed and is subject to reinstatement of removal does not except them from these principles. *See, e.g.*, *Diego Francisco v. Noem*, No. C26-25, 2026 WL 295211, at *3 (W.D. Wash. Feb. 4, 2026).

This Court agrees with its peers in finding that Petitioner had a protected interest in her liberty, the deprivation of which was subject to constitutional limits. The Court further finds that detailed analysis of the remaining *Mathews* factors is not necessary because it is uncontested that Petitioner received *no process of any kind* to contest the (informal) revocation of her OSUP, either before she was re-detained or at any point thereafter. Only violations of an OSUP and certain other enumerated justifications allow an OSUP to be revoked. *See* 8 C.F.R. § 241.4(l). Due process requires "the opportunity to be heard"—i.e., to contest the government's asserted justification—"at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 332 (citation modified). The *Mathews* test is a tool for determining whether a given procedure provided adequate opportunity to be heard under the circumstances—that is, what process is due. Where a person with a protected liberty interest is provided *no process at all* to contest its deprivation, due process cannot be satisfied. Put differently, *no process* can never equal *due*

*process.* The risk of erroneous deprivation will always be unacceptably high where no process is provided, and the government has very little legitimate interest in depriving people of protected liberty interests with no process at all.[9] *See Chaudhry*, 2025 WL 3706534, at *6 ("Petitioner's detention with no process at all violates the due process protections afforded to him by the Constitution.").

Finally, the Court's ruling does not mean Respondents have no lawful authority or basis to detain Petitioner in order to execute her removal, but simply that they must exercise this authority only within legal and constitutional limits. As the Court has previously noted under such circumstances, had Respondents complied with the law and provided Petitioner the process she was due, "they might very well have been able to (and may be able to in the future) legitimately revoke Petitioner's release. But here, on this occasion, their rush to revoke and remove doomed the effort." *Alfonso v. Bondi*, No. C25-2748, 2026 WL 395326, at *6 (W.D. Wash. Feb. 12, 2026). The same rush to revoke dooms the effort here.

Because Petitioner had no opportunity to respond to the reasons for her detention, her re-detention violated her due process rights under the Fifth Amendment to the United States Constitution. Therefore, the Court finds that Petitioner is in custody in violation of the Constitution of the United States.

**C.      Remedy**

Respondent acknowledges that Petitioner appears to have been re-detained in violation of DHS's own regulations, and perhaps also without due process, but asserts that such violation

---

[9] To the extent that a full *Mathews* analysis is required, the Court adopts the reasoning of the Honorable Grady Leupold, United States Magistrate Judge, in *Diego Francisco*, 2026 WL 295211, at *3–6, in finding that all three *Mathews* factors weigh in Petitioner's favor based on the process of her re-detention. The facts in *Diego Francisco* are nearly identical to the facts in the instant case, except that in *Diego Francisco* there was a contested issue of fact as to whether Petitioner received an informal interview. Here, Respondent acknowledges there is no record of any interview or OSUP revocation for Petitioner. The Court does not adopt Judge Leupold's finding that a pre-deprivation hearing was specifically required before revocation of an OSUP, as that question is not presented here.

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 10

requires Petitioner be afforded an interview, not released:

> Petitioner also argues that her detention without "meaningful custody review" violates the INA and Due Process. Pet., at 1-2. Petitioner provides no statutory or regulatory basis for a custody review. To the extent that she challenges the revocation of her OSUP, Federal Respondents acknowledge that the record does not contain evidence of revocation or an informal interview. 8 CFR §§ 241.4(l), 241.13(i). However, the appropriate remedy here is to require ICE to follow DHS regulations.

Dkt. No. 4 at 6. Respondent also argues that the purpose of the informal interview required—which DHS did not provide—is for a noncitizen to present information showing that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 5. Because ICE has a travel document for Petitioner's removal, Respondent asserts, Petitioner will not be able to present such a showing. *Id.* Therefore, Respondent argues, the failure to provide an interview should not result in Petitioner's release. The Court emphatically rejects this "no harm, no foul" approach to justify violations of the Constitution.[10]

Respondent relies on a single six-year-old case, *Ahmad v. Whitaker*, No. C18-287, 2018 WL 6928540, at *5 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019), but ignores more recent contrary authority, including a recent decision by this Court involving the same Respondents and Respondents' counsel, *Alfonso*, 2026 WL 395326, at *6. As the Court found in that case, where a noncitizen on an OSUP is re-detained without an interview that complies with 8 C.F.R. § 241.13(i)(3), "[t]he remedy for Respondents' misconduct is Petitioner's immediate release from custody, 'thereby returning [Petitioner] to the status quo before his release was improperly revoked.'" 2026 WL 395326, at *6 (second alteration in original) (quoting *Hoang v. Noem*, No. C25-3177, 2026 WL 89319, at *5

---

[10] It is evident from the record that Respondents were not in possession for a travel document for Petitioner at the time of her re-detention. *See* Dkt. No. 5 ¶ 15 (stating that ICE first informed Petitioner that it possessed a travel document to remove her on March 4, 2026, after a negative reasonable fear determination by an Immigration Judge).

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 11

(C.D. Cal. Jan. 12, 2026) (merely ordering ICE to provide the "initial informal interview[,]" after "more than two months [of] re-detention, would not cure the violation suffered by" the petitioner); *see also Delkash v. Noem*, No. C25-1675, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (collecting cases).

Because Petitioner's deprivation of liberty without due process has been unlawful from its inception, her immediate release is required.

**IV.    CONCLUSION**

Accordingly, it is hereby ORDERED:

(1)    The Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.

(2)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    (a)    SHALL release Petitioner from detention no later than 5:00 p.m. on March 12, 2026, under the provisions of her OSUP;

    (b)    SHALL submit to the Court, within **forty-eight (48) hours** of this order, a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

(3)    Petitioner's request for document production by Respondents is DENIED AS MOOT.

(4)    Petitioner's request for injunctive relief regarding her transfer or removal is DENIED AS MOOT.

(5)    Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 19th day of March, 2026.

Tana Lin
United States District Judge

AMENDED ORDER ON PETITION FOR HABEAS CORPUS – 12